UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN HAMLETT,

                         Plaintiff,

                                                   9:17-cv-0939

v.                                                  (GLS/TWD)

PATRICK STOTLER, et al.,

                         Defendants.
_____

APPEARANCES:                              OF COUNSEL:

JOHN HAMLETT
Plaintiff, *pro se*

BOND, SCHOENECK & KING, PLLC          JOHN BOYD, ESQ.
*Pro bono* Counsel for Plaintiff             GEORGE LOWE, ESQ.

HON. LETITIA JAMES                    RYAN ABEL, ESQ.
New York State Attorney General         ADRIENNE KERWIN, ESQ.
Attorney for Defendants

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### <u>AMENDED ORDER AND REPORT-RECOMMENDATION[1]</u>

       This civil rights action, commenced pursuant to 42 U.S.C. 1983, has been referred by the

Hon. Gary L. Sharpe, Senior U.S. District Judge, for the purpose of conducting an evidentiary

hearing on the issue of whether Plaintiff exhausted his administrative remedies prior to

commencing this action.  (Dkt. No. 28.)  *Pro bono* counsel for Plaintiff was assigned.  (Dkt. No.

---

[1]  This Order and Report-Recommendation corrects the August 12, 2019, Report-Recommendation indicating this matter is ready for trial.  (*See* Dkt. No. 54 at 19; *see also* Dkt. No. 55.)  As Defendants filed their motion for summary judgment (Dkt. No. 16) prior to serving their answer (Dkt. No. 34), the parties have not yet engaged in discovery.  (*See*  07/17/2017 Text Minute Entry; *see also* Dkt. No. 55.)

32.[2])  An evidentiary hearing was held on October 3, 2018, and the parties submitted supplemental briefing.  (Dkt. Nos. 45, 50, 52.)

Based upon the evidence adduced at the hearing, the Court concludes that while Plaintiff did not exhaust the administrative remedies set forth in the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP"), N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013), he failed to do so because the remedies were rendered unavailable.  Therefore, the Court recommends that Plaintiff be excused from the exhaustion requirements of the DOCCS IGP.

## I.     BACKGROUND

*Pro se* Plaintiff John Hamlett, an inmate in the custody of DOCCS, commenced this civil rights action under 42 U.S.C. § 1983 asserting claims arising out of his confinement at Clinton Correctional Facility.  (Dkt. No. 1.)  Only Plaintiff's Eighth Amendment excessive force claim against Defendants Sergeant Patrick Stotler ("Stotler"), Corrections Officers Joseph Collins ("Collins"), and John Doe survived *sua sponte* review conducted pursuant to 28 U.S.C. §§ 1915e and 1915A.  (Dkt. No. 4.)

Plaintiff alleges Defendants assaulted him on September 10, 2014, while he made his way to an Inmate Liaison Committee ("ILC") meeting.  (Dkt. No. 1 at 4.[3])  Plaintiff claims he was struck in the back, ribs, and head; kicked repeatedly; "taken down to the floor;" "hit with the

---

[2]  The Court extends its appreciation to John Boyd, Esq. and George Lowe, Esq. for their *pro bono* service.

[3]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.  Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

'night stick;'" and choked.  *Id.* at 5.  As a result, Plaintiff defecated, soiling his pants, and suffered a lump on his head, a broken rib, and a sore throat.  *Id.*

Plaintiff claims he filed two grievances in response to the September 10, 2014, incident. (Dkt. No. 20-1 at ¶ 10.)  He wrote the first grievance on September 10, 2014, the same day as the incident, alleging assault and a lack of medical care.  (Dkt. No. 20-2 at 1.)  After recounting the incident, Plaintiff wrote:

> I fear for my safety and am requesting that I be moved with a camcorder while confined and be provided outside medical treatment where I can get proper care.
>
> I also request the names of the unknown sergeant who escorted me to the search area, as well as the other officer.
>
> The said unknown sergeant and Collins (C.O.), and unknown officers should be punished and I want to file criminal charges.

*Id.* at 5.  In addition to filing the grievance with Clinton's IGP, Plaintiff sent his grievance to Clinton Superintendent Racette, DOCCS Commissioner Anthony Annucci, and Richard Langone, Esq.  *Id.* at 1.

On September 19, 2014, Plaintiff wrote a second grievance regarding the assault.  *Id.*  In this grievance, Plaintiff provided a "more detailed" description of the location and time of his assault and repeated the allegations contained in his earlier letter.  *Id.* at 7-9.  Plaintiff again sought relief from the grievance process, writing:

> 7.  None of the procedures of the Department were followed so far as reporting my complaints to medical and security staff.
>
> 8.  I am requesting that Sergeant P. Stoler (sic); Officer J. Collins; and the unknown named officer, be arrested and charged with assault.
>
> 9.  I have witnesses to back up my claims of assault. Your immediate response is greatly appreciated.

*Id.* at 9.  This grievance was also sent to the New York State Commission of Correction and the Clinton County Sheriff's Office.  *Id.*  Plaintiff claims he handed both grievances "to the officer during mail pick up" while he was in the Special Housing Unit ("SHU") "as is the procedure" at Clinton.  *Id.* at 1.

On September 30, 2014, Plaintiff was transferred from Clinton to Southport Correctional Facility ("Southport").  (Dkt. Nos. 16-5 at 3; 16-9 at 3.)  A week later, on October 7, 2014, Plaintiff was transferred from Southport to Five Points Correctional Facility ("Five Points").  (Dkt. Nos. 16-9 at 3; 16-7 at 3.)  On October 24, 2014, while housed at Five Points, Plaintiff wrote to Christine Gregory ("Gregory"), the IGP Supervisor at Clinton, to request a grievance number for his September 10, 2014, grievance.  (Dkt. Nos. 20-2 at 2; 23-2 at 4.)  In the letter, Plaintiff wrote:

> 1.  On September 10, 2014, I was assaulted by [Officer J. Collins, Sergeant P. Stotler], and an unknown named officer which I filed a grievance to your office and sent the Superintended Mr. Racette a copy of.
>
> 2.  An investigation has started on the matter, but you never sent me a grievance number.
>
> 3.  I am now requesting that you send me a grievance number for said grievance of assault.
>
> Your immediate action in this matter is greatly appreciated.

(Dkt. Nos. 20-2 at 11; 23-2 at 4.)  On October 30, 2014, Gregory responded to Plaintiff in a memo, advising him that her office had not received a grievance relating to the September 10, 2014, assault.  (Dkt. Nos. 20-2 at 13; 23-2 at 6.)  The brief memo read:

> The last grievance on file for DIN# 08A0598 for the year 2014 was filed on 7/9/14.  There is no grievance on file for you concerning an incident of 9/10/14.

*Id.*

On November 11, 2014, Plaintiff responded, writing to Gregory that he had filed "many more grievances . . . since [July 9, 2014] that seem to have disappeared." (Dkt. Nos. 20-2 at 15; 23-2 at 8.) Plaintiff also attached copies of his September 10 and September 19, 2014, grievances. *Id.* Finally, Plaintiff asked Gregory to "[p]lease file them both so I can exhaust any remedies." *Id.*

Gregory responded on November 24, 2014. (Dkt. No. 23-2 at 14.) In a memo, she acknowledged Plaintiff's complaints and advised him that his grievances had to be submitted "at the facility where the inmate is housed, even if it pertains to another facility," per DOCCS Directive #4040. *Id.* Gregory returned the copies of Plaintiff's grievances so that he could submit them at his present facility. *Id.*

On December 14, 2017, Defendants filed a pre-answer motion for summary judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure on exhaustion grounds. (Dkt. No. 16.) In support of their motion, Defendants submitted IGP records showing there is no indication Plaintiff filed any grievance while confined at Clinton, Southport, or Five Points relating to the September 10, 2014, assault. (Dkt. Nos. 16-5 at ¶ 14; 16-7 at ¶ 14; 16-9 at ¶ 14; 23-1 at ¶ 7; 23-2 at ¶ 2.) Defendants also submitted evidence establishing that there was no record of an appeal to the Central Office Review Committee ("CORC") of any grievance related to the assault. (Dkt. Nos. 16-11 at ¶ 15; 16-12 at 2-3.) Plaintiff responded in opposition to the motion claiming that administrative remedies were unavailable to him, and Defendants filed reply papers. (Dkt. Nos. 20, 23.)

By Order and Report-Recommendation ("R&R") issued April 27, 2018, this Court recommended that Defendants' motion for summary judgment on exhaustion grounds be denied. (Dkt. No. 26.) Specifically, this Court found Plaintiff failed to exhaust his administrative

remedies, but he nonetheless should be excused from this obligation because circumstances rendered Plaintiff's administrative remedies unavailable to him. *Id.* at 11-15. Defendants filed an objection to the R&R and requested an exhaustion hearing on the matter. (Dkt. No. 27.)

By Decision and Order issued June 6, 2018, the District Court (1) adopted the R&R in its entirety; (2) denied summary judgment to Defendants; and (3) granted Defendants' application for an exhaustion hearing. (Dkt. No. 28 at 3.) *Pro bono* counsel was assigned to Plaintiff. (Dkt. No. 32.) Defendants filed their answer on July 10, 2010. (Dkt. No. 34.) A telephone conference was held on July 17, 2018, to discuss, *inter alia*, scheduling of the evidentiary hearing and discovery deadlines. (*See* 07/17/2018 Text Minute Entry.) The discovery deadlines were not set at this time. *Id.*

An evidentiary hearing was held on October 3, 2018. (*See* Dkt. No. 45.) The parties submitted supplemental briefing. (Dkt. Nos. 50, 52.) Based on the evidence presented at the hearing, the Court finds Plaintiff's administrative remedies were rendered unavailable to him due to the opacity of the DOCCS program.

## II.    HEARING TESTIMONY AND EVIDENCE

At the evidentiary hearing, the Court heard testimony from Gregory, and Rachael Seguin ("Seguin"), the Assistant Director of the IGP, for Defendants. Plaintiff also testified.

### A.    Exhibits

The Court received into evidence the following exhibits introduced by Defendants:

Exhibit D-2    Computer printout from CORC database;

Exhibit D-3    Inmate Grievance Summary;

Exhibit D-4    Memo from Gregory to Plaintiff, dated October 30, 2014;

Exhibit D-5    Memo from Gregory to Plaintiff, dated November 24, 2014; and

Exhibit D-7    Declaration of Hanna Martin, IGP Supervisor at Southport Correctional Facility.

The Court received into evidence the following exhibits introduced by Plaintiff:

Exhibit P-1    Letter to Inmate Grievance Resolution Committee ("IGRC"), dated September 10, 2014;

Exhibit P-2    Letter to IGRC, dated September 19, 2014;

Exhibit P-3    Letter to IGP Supervisor, dated October 24, 2014;

Exhibit P-5    Letter to Gregory, dated November 11, 2014, with attachments;

Exhibit P-7    Meeting notes from the ILC meeting, dated August 15, 2014;

Exhibit P-8    Meeting notes from the ILC meeting, dated September 2, 2014; and

Exhibit P-10    Affidavit of Plaintiff, dated January 3, 2018.

**B.    Summary of Testimony**

1.    <u>Christine Gregory</u>

Gregory has worked for DOCCS since 1995.  (Dkt. No. 45 at 5.)  She has served as an IGP supervisor at various DOCCS facilities since 2003, and she currently holds that title at Clinton, where she has worked since 2012.  *Id.* at 6-7.  In that role, Gregory supervises "all activities of the program, including the processing of the complaints that are received . . . , the hearings, and the appeal system."  *Id.* at 7.

At the exhaustion hearing, she testified about the grievance process in general and about Plaintiff's use of the same.  *See id.* at 7-27.  As to the grievance process in general, Gregory explained that her office receives inmate grievances submitted through Clinton's intra-facility mail system.  *Id.* at 7.  First, the inmate submits his grievance to be picked up "in the blocks by security staff."  *Id.* at 9.  The IGP office receives grievances from the mailroom staff.  *Id.* Gregory testified she did not know the process for submitting grievances from the SHU, but

believed those grievances to be picked up by a corrections officer.  *Id.* at 9, 21.  She also testified inmates could submit grievances through the intra-facility mail system from the SHU.  *Id.* at 26.

According to Gregory, inmate grievances usually have to be made in writing, although they can be submitted using the facility's standard form or plain paper.  *Id.* at 9.  Gregory did not know if the standard forms were available in the SHU.  *Id.* at 21.

She testified that when an inmate submits a grievance, the grievance is "reviewed and determined whether it's a timely issue or not."  *Id.* at 8.  Then, the grievance is "processed by titling and coding," meaning it is "given a code" identifying it as one of 50 categories, based on the subject matter, and "given a title based on what the contents are."  *Id.*  However, inmates do not receive a receipt for their grievance, and there is no way for an inmate to know that his grievance was received.  *Id.* at 22.

She explained that once a grievance has been received, titled, and coded, it is assigned a grievance number and, depending on the type of grievance, it is either investigated or sent "to the superintendent level."  *Id.* at 10.

Where, as here, the complaint relates to staff misconduct, it is referred to the superintendent.  *Id.*  Gregory related she has no decision-making authority with regard to staff misconduct complaints, which are instead assigned to a supervisor outranking the individuals named in the grievance.  *Id.* at 11.  Once the superintendent makes a decision, the response is sent to the inmate through the intra-facility mail system.  *Id.* at 11-12.  At that point, the inmate has seven days from receiving the response to appeal the decision to CORC.  *Id.* at 12.  To appeal, the inmate fills out the bottom portion of the form on which the superintendent's response is printed.  *Id.*  "It's not a separate form," Gregory testified.

Gregory's office retains hard copies of all grievances filed at Clinton, going back four years from the present year. *Id.* at 13-14. In other words, Gregory testified, her office still held hard copies of all grievances filed in 2014 at the time of the exhaustion hearing in 2018. *Id.* at 14. Gregory's office also maintains a list of grievances for each inmate. *Id.* at 14, 16.

Regarding Plaintiff's use of the IGP at Clinton, Gregory testified that Plaintiff filed eleven grievances between January 9, 2013, and July 9, 2014, including three grievances alleging staff misconduct. *Id.* at 16-17. She further testified that Plaintiff did not file any grievances in September of 2014. *Id.* Finally, Gregory confirmed her correspondence with Plaintiff regarding the missing grievances. *Id.* at 17-20, 24-26.

      2.    <u>Rachael Seguin</u>

Seguin has worked for DOCCS for approximately ten years. *Id.* at 28. Currently, Seguin serves as the Assistant Director of the IGP in Albany, a position she has held for over a year and a half. *Id.* In this role, Seguin is "responsible for maintaining records of the appeals that come to Central Office from facilities, ensuring that facilities are processing grievances in accordance with Department policies," and "supervising the regional coordinators and supervisors who are responsible for certain areas throughout the state." *Id.* at 28-29. In 2014, Seguin worked as an IGP Supervisor in Albany. *Id.* at 28.

Like Gregory, Seguin also testified about the inmate grievance appeals process in general and Plaintiff's use of the same. *See id.* at 29-35. Regarding the appeals process in general, Seguin testified that her office is "the final administrative appellate level of the grievances." *Id.* at 29. When an inmate chooses to appeal a decision rendered on his grievance at the facility level, the appeal is sent by mail to Seguin's office, where it is date-stamped and logged into a computer database. *Id.* Seguin's office then schedules the appeal for a hearing before CORC,

which take place each week.  *Id.* at 30.  Once CORC has reached a decision, that response is mailed to the appropriate facility for forwarding to the inmate.  *Id.* at 31.

Regarding Plaintiff's use of the inmate grievance appeal system, Seguin testified that CORC records indicated no grievance or appeal was filed from Plaintiff regarding the use of excessive force in September of 2014.  *Id.* at 32.

Additionally, Seguin testified that delays can and do happen at all stages of the inmate grievance process.  *Id.* at 33.  Where an inmate does not receive a response to his grievance within the appropriate timeframe, Seguin testified, the inmate "can request that the grievance be passed through to CORC for the failure of the superintendent to respond in a timely manner."  *Id.* at 34.  However, if an inmate in the SHU files a grievance that is lost and then becomes untimely, Seguin confirmed, "[t]he only avenue or redress . . . would be to file a grievance about the fact that the grievance was either never received or was untimely."  *Id.* at 35.  Furthermore, Seguin testified that inmates have, in her experience, complained that their grievances were not received by facility IGP offices.  *Id.*

### 3.    Plaintiff

Plaintiff's testimony recounted his use of the IGP following the September 10, 2014, incident and throughout his time in DOCCS custody.  *See id.* at 38-89.  Following the alleged assault, Plaintiff testified that he was charged with approximately three or four violations and sentenced to the SHU.  *Id.* at 39.  Although he was transferred to different DOCCS facilities several times thereafter, Plaintiff would remain in the SHU at each facility until January of 2015.  *Id.* at 49.  Plaintiff testified he wrote the first of two grievances regarding the alleged assault the same day he arrived in Clinton's SHU, on September 10, 2014.  *Id.* at 40.  He made several

copies of the grievance using carbon paper he received from an inmate in a neighboring cell. *Id.* at 69. He also transcribed additional copies by hand. *Id.* at 72.

Plaintiff testified that after drafting the grievance on September 10, 2014, he "sealed it or folded it up, put it in the envelope, signed, filled out the envelope" with his name and cell location, addressed it to the IGRC. *Id.* at 43. He then submitted the grievance through the intra-facility mail system. *Id.* at 44. Plaintiff reported using the same intra-facility mail system for his September 19, 2014, grievance, although he did not remember to which officer he handed his grievances for filing. *Id.* at 77.

Plaintiff testified he had previously used the IGP at Clinton. *Id.* at 83. According to Plaintiff, some of his previous grievances had been submitted but were never filed. *Id.* As a member of the ILC, Plaintiff presented records indicating that the committee had raised this concern with the superintendent. *Id.* at 63. Because of this concern, Plaintiff sent his September 10, 2014, grievance directly to the superintendent, in addition to submitting it through the intra-facility mail. *Id.* at 42.

Nonetheless, Plaintiff believed his grievances regarding the September 10, 2014, assault had been received. *Id.* at 47-48. In fact, Plaintiff testified, he was "amazed" to hear from Gregory that his grievances had not been received. *Id.* at 54. "I watched [the officer] put it in the [grievance] box," Plaintiff testified. *Id.* at 80. Plaintiff also noted there are security cameras in the SHU that provide "accountability for mail going out." *Id.*

Plaintiff learned that his grievances had not been received from Gregory's October 30, 2014, letter. *Id.* He received no receipt for either of his grievances and, as Plaintiff testified, receipts are not part of the IGP process. *Id.* at 47, 74-75. According to Plaintiff, he waited until October to follow up on his September grievances because "the grievance system in the

correctional facilities don't (sic) run on time." *Id.* at 79. Plaintiff explained, "And because I know sometimes they be (sic) backed up, I try to give as much time as possible to give them a chance to respond, especially since I moved from one facility to another and the mail takes forever." *Id.*

Additionally, Plaintiff testified he attempted to file a grievance regarding the September 10, 2014, incident at Five Points, as advised by Gregory in her November 24, 2014, letter. *Id.* at 86. However, according to Plaintiff, Five Points would not accept his grievance because it was untimely. *Id.* Plaintiff could not recall whether he had attempted to file the grievance again, and he did not have records to support this contention. *Id.* at 88. Plaintiff testified that while he was at Five Points, the Inspector General's Office "came to see [him]" regarding an investigation into the alleged assault. *Id.*

## C.    Post-Hearing Submissions

Plaintiff contends he used the proper procedure for submitting his September 10 and September 19, 2014, grievances, which were not filed and therefore became untimely. (Dkt. No. 52 at 3, 5.) Relying on Seguin's testimony, Plaintiff argues an inmate in his situation would only be able to seek relief by "filing an entirely new and separate grievance about the fact that the previous grievance was never received." *Id.* at 4. Further, Plaintiff avers he "was not provided with any instructions as to how to proceed with a repeat grievance that was submitted but never filed, nor was he advised to file a grievance about the grievance that was never filed." *Id.* at 5. Additionally, Plaintiff received no instructions for filing a grievance that was untimely. *Id.* at 6. As a result, Plaintiff argues, "the process for appealing unfiled and undecided grievances was anything but clear." *Id.* at 9. Moreover, Plaintiff argues Clinton "should have known that there

may have been an issue with the receipt and filing of grievances" based on complaints from the ILC.  *Id.*

Defendants contend the grievance program was fully functional at Clinton, Southport, and Five Points during the relevant periods of Plaintiff's confinement, yet Plaintiff cannot prove that he properly submitted or filed any grievances related to the September 10, 2014, incident. (Dkt. No. 50 at 1-2.)  In particular, Defendants argue Plaintiff's use of carbon paper to make copies of his grievances fails to demonstrate that he filed these grievances properly.  *Id.* at 4. Defendants also point out that Plaintiff used the intra-facility mail system and the IGP on other occasions without issue.  *Id.* at 5.  Defendants further argue Plaintiff failed to request an extension for time to re-file his grievances and failed to appeal the unanswered grievances to CORC.  *Id.* at 5-7.

## III.    LEGAL STANDARD FOR EXHAUSTION

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and

doing so properly.  *Id.* at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'" (quoting *Woodford*, 548 U.S. at 90)).  In New York State prisons, DOCCS has a well-established three-step IGP.  7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence.  *Id*. § 701.5(a)(1).  A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id*. § 701.5(b)(1).  If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision.  *Id*. § 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. § 701.5(c)(3)(ii).  Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step.  *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision.  *Id*. § 701.5(d)(1)(i).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent.  *Id.* § 701.8; *see,*

*e.g., Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y.) (Section 701.8 has been found applicable to claims of excessive force.).  The superintendent is required to initiate an in-house investigation by higher-ranking supervisory personnel; request an investigation by the Inspector General's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved.  *Id.* § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment may not be withdrawn and must be addressed by the superintendent.  *Id.*  The superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant.  *Id.* § 701.8(f).  If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk."  *Id.* § 701.8(g).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.  *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and

citations omitted).  In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*. at 1859.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.  In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"  The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry.  *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements.  *See Jones*, 549 U.S. at 216.  Plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*.  *Id.*

## IV.    ANALYSIS

Applying the legal standard set forth above, the issue of exhaustion involves a two-step analysis: First, the Court must determine whether Plaintiff properly exhausted his administrative remedies by following all the steps required by the administrative review process.  Second, if

Plaintiff did not exhaust his administrative remedies, the Court must then determine whether the administrative remedy was available to Plaintiff.  Both steps of the analysis are relevant here.

### A.    Plaintiff's Failure to Exhaust

Plaintiff claims he submitted written grievances relating to the September 10, 2014, assault on September 10, 2014, and September 19, 2014, to the officers making rounds in the SHU at Clinton.  (Dkt. Nos. 20-2 at 4, 7; 52 at 2.)  Nevertheless, the undisputed evidence presented in the record and at the exhaustion hearing shows there is no record of any grievance related to the alleged assault having been filed at Clinton, Southport, or Five Points, or appealed to CORC.  (Dkt. Nos. 16-5 at ¶ 14; 16-9 at ¶ 14; 16-11 at ¶ 15; 16-12 at 2-3; 23-1 at ¶ 7; 23-2 at 2; 52 at 3.)  Therefore, the Court finds that Plaintiff failed to exhaust his administrative remedies under the DOCCS IGP prior to commencing this lawsuit.  *See Woodford*, 548 U.S. at 93; §§ 701.8(f), (g).

### B.    Availability of Administrative Remedies

As explained above, the Court's finding that Plaintiff failed to exhaust his administrative remedies does not end the exhaustion review.  Previously, the Court found the question of availability in this case to be governed by the Second Circuit's decision *Williams*, in which the Second Circuit held that the opacity of Section 708.1(g) rendered the DOCCS IGP procedure unavailable to the plaintiff-inmate, who had failed to appeal an unfiled, unanswered grievance. (Dkt. No. 26 at 12-13; 829 F.3d at 126.)  Applying *Williams*, this Court found Defendants were not entitled to summary judgment on exhaustion grounds, despite Plaintiff's failure to exhaust his administrative remedies.  (Dkt. No. 26 at 15.)

Based upon the evidence and testimony presented at the exhaustion hearing, the Court renews its earlier finding that *Williams* governs the issue of availability in this case.  Indeed, the

evidence and testimony presented at the exhaustion hearing only further illustrates the opacity of the IGP procedures demanded of Plaintiff.  For instance, Defendants argue in their post-hearing submission that Plaintiff could have appealed the unanswered grievances directly to CORC or requested an extension of time to re-file the missing grievances.  (Dkt. No. 50 at 5-7.)  However, according to Seguin's testimony, "[t]he only avenue of redress" available to an inmate housed in the SHU who attempts to file a grievance but then discovers that the grievance was not filed and has become untimely "would be to file a new grievance about the fact that the grievance was either never received or was untimely."  (Dkt. No. 45 at 35.)  Compounding the difficulties facing Plaintiff to grieve under these circumstances is the fact that Plaintiff was moved to two different correctional facilities during the timeframes relevant to the September 2014 grievances. (*See* Dkt. Nos. 16-5 at 3; 16-9 at 3; 16-9 at 3; 16-7 at 3.)

This is precisely the opacity confronted by the Second Circuit in *Williams*.  *See* 829 F.3d at 124.  While assuming the plaintiff in *Williams* "technically could have appealed his [unfiled] grievance," the Second Circuit also stressed that "the regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies" in such a circumstance.  *Id.* This is because, "[o]n their face, the regulations only contemplate appeals of grievances that were actually filed."  *Id.*

In other words, Defendants and their witnesses may be correct that Plaintiff could have or should have appealed his unfiled grievances to CORC, requested an extension of time within which to re-file them, or filed new grievances regarding the failure to file his earlier grievances. In fact, Plaintiff testified at the exhaustion hearing that he did attempt to re-file his grievances at Five Points and they were rejected as untimely.  (Dkt. No. 45 at 86.)  Nevertheless, the Court finds any failure on Plaintiff's part to follow these courses of action is nonetheless excused under

the Second Circuit's decision in *Williams* because the regulations themselves "give no guidance whatsoever to an inmate" in Plaintiff's position. Instead, as Defendants' evidence demonstrates, the DOCCS IGP process "is susceptible of multiple reasonable interpretations," when it comes to pursuing a submitted-but-unfiled grievance. *See Ross*, 136 S. Ct. at 1859. The Court finds this opacity problematic.

In light of the foregoing, the Court finds Plaintiff's administrative remedies under the DOCCS IGP were unavailable. If the District Court adopts this Amended Report-Recommendation, the Court will issue a Mandatory Pretrial Discovery and Scheduling Order.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that the District Court determine that the administrative remedies under the DOCCS IGP were rendered unavailable to Plaintiff; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Amended Order and Report-Recommendation, along with a copy of the unpublished decision cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam). Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

---

[4]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated: August 15, 2019
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

Case 9:17-cv-00939-TWD   Document 56   Filed 08/15/19   Page 21 of 27

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

2016 WL 3948100
Only the Westlaw citation
is currently available.
United States District
Court, S.D. New York.

Jonathan MENA, Plaintiff,
v.
CITY OF NEW YORK,
et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

# I. BACKGROUND

## A. Facts [1]

On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-hour period that he was held in the cell. (*See id.* at 4.) Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt.

¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

**\*2** As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a number of his

substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his

Case 9:17-cv-00939-TWD    Document 56    Filed 08/15/19    Page 23 of 27

Mena v. City of New York, Not Reported in Fed. Supp. (2016)
2016 WL 3948100

Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund,* No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz*, 258 F.3d at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

## III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days[,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received

Case 9:17-cv-00939-TWD    Document 56    Filed 08/15/19    Page 25 of 27

Mena v. City of New York, Not Reported in Fed. Supp. (2016)
2016 WL 3948100

no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross, 136 S. Ct. at 1862* ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly rejected the Second Circuit's prior framework under *Giano v. Goord, 380 F.3d 670 (2d Cir. 2004)* and, by extension, *Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)*, which recognized a "special circumstances" exception

to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ____, ____, 2016 WL 3729383, at \*4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross, 136 S. Ct. at 1862*; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross, 136 S. Ct. at 1858–59*. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams,* 2016 WL 3729383, at \*4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross, 136 S. Ct. at 1859*. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.; see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross,* 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin,* 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D)(9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross,* 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross,* 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams,* 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams,* 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross,* 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not

Case 9:17-cv-00939-TWD    Document 56    Filed 08/15/19    Page 27 of 27

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g.,* *Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3948100

## Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See* *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.